IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| v. : | Criminal No. 11-531 (JBS) |
| JAMES PRESSLEY, : | |
| Defendant. : | **OPINION** |

**APPEARANCES:**

Paul J. Fishman
United States Attorney
    By: R. Stephen Stigall, Assistant U.S. Attorney
OFFICE OF THE U.S. ATTORNEY
401 Market Street, Fourth Floor
Camden, NJ 08101
    Attorney for the United States of America

Edward J. Crisonino, Esq.
LAW OFFICES OF EDWARD J. CRISONINO
210 Haddon Avenue
Westmont, NJ 08108
    Attorney for Defendant James Pressley

**SIMANDLE,** Chief Judge:

I.   **INTRODUCTION**

     The United States has indicted Defendant James Pressley in

this case for the crime of converting to his own use the money of

the United States, namely, Supplemental Security Income ("SSI")

benefits payments he received from the Social Security

Administration ("SSA") to which he was not entitled due to his

concealment of income and resources, in violation of 18 U.S.C. §

641.  The sources of allegedly concealed income upon which the

indictment was based are set forth in a Bill of Particulars

supplied by the Government herein, the largest source being Pressley's receipt of corrupt payments (bribes) totaling $35,800 when he was a member of the Pleasantville Board of Education in 2006.  Pressley had previously been indicted, convicted and sentenced in this Court for his receipt of these same bribes, in violation of 18 U.S.C. § 1951(a), pursuant to a written plea agreement.  United States v. James Pressley, Crim. No. 07-974 (JBS) (Information filed Dec. 10, 2007).  The written plea agreement contained the Government's promise that the U.S. Attorney's Office will not initiate any further charges against Pressley for, between May 2006 and November 2006, demanding and receiving corrupt payments in exchange for his official action and influence as a member of the school board.

Defendant seeks dismissal of the present indictment, alleging that the United States has breached his 2007 plea agreement by initiating charges based largely on his receipt of the same bribes for which he was already prosecuted and sentenced.  Defendant argues that a valid plea agreement between himself and the United States Attorney's Office for the District of New Jersey in the prior criminal matter of United States v. James Pressley, Crim. No. 07-974, has been breached by the Government in the present matter, and that such breach warrants dismissal of the indictment.  The Government argues that it has not breached Defendant's prior plea agreement, and that in any

case, dismissal of the indictment is not warranted even if the Court were to find that the plea agreement has been breached. The principal issues to be decided in this motion are (1) whether bringing the indictment in this matter breached Defendant's prior plea agreement and (2) if so, whether dismissal of the indictment is the appropriate remedy for such breach.

This motion presents a close question in a unique factual situation.  However, because the Court concludes that the present indictment, based in substantial part on evidence of Defendant's prior undisclosed income from the 2006 bribes, is inconsistent with what Defendant reasonably understood and expected when he entered into the plea agreement, the Court finds that the indictment constitutes a breach of the plea agreement. Additionally, the Court concludes that the appropriate remedy for this breach is specific performance of the agreement, which requires the dismissal of the instant indictment without prejudice, for reasons now discussed.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

On several dates in June through September of 2006, Defendant accepted bribes as a member of the Pleasantville, New Jersey, Board of Education, in exchange for his support for obtaining roofing and insurance brokerage services on behalf of parties paying the bribes.  December 11, 2007, Transcript of Plea

Hearing, 31:4-32:14 [Docket Crim. No. 07-974, Item 17].  The bribes in total amounted to approximately $40,000.[1]  Id.  On September 6, 2007, Defendant was arrested on a one-count criminal complaint alleging that Defendant's accepting of bribes constituted a violation of 18 U.S.C. § 1951(a).  On December 10, 2007, upon the filing of an Information, Defendant pleaded guilty to the charge in accordance with a plea agreement with the United States Attorney's Office for the District of New Jersey.  [Docket Crim. No. 07-974, Item 15.]

The plea agreement was dated September 11, 2007, but was signed by the parties on December 10, 2007, and it included a waiver of appeal rights.  The agreement further set forth, in part:

> If James A. Pressley enters a guilty plea and is sentenced on this charge, and otherwise fully complies with all of the terms of this agreement, this Office will not initiate any further criminal charges against James A. Pressley for, between in or about May 2006 and November 2006, demanding and accepting corrupt payments in exchange for his official action and influence as a member of the Pleasantville

---

[1] The parties in the instant motion present the amount of bribes received as $35,800.  See, e.g., Bill of Particulars at 6. The Court notes, however, that Defendant pleaded guilty to accepting a total of $40,800 of corrupt payments in the relevant time period of 2006.  See Dec. 10, 2007 Transcript of Plea Hearing at 31:11-14.  The precise amount of the bribes received is not material to the present dispute, so the Court will refer to the amount as approximately $40,000, and the bribe money in this case is included within the bribe money for which Pressley was convicted upon his plea of guilty in 2007 and sentenced in 2008.

Board of Education.

Plea Agreement at 1.  The agreement further states:

> This agreement was reached without regard to
> any civil or administrative matters that may
> be pending or commenced in the future against
> James A. Pressley.  This Agreement does not
> prohibit the United States, any agency thereof
> (including the Internal Revenue Service) or
> any third party from initiating or prosecuting
> any civil proceeding against James A.
> Pressley.

Plea Agreement at 4.

The parties do not dispute that the Court accepted Defendant's guilty plea, that Defendant fully performed his obligations under the plea agreement, including cooperating with the Government in the prosecution of others, and was sentenced on August 8, 2008 to, inter alia, a custodial sentence of 24 months imprisonment and a three-year period of supervised release. [Docket 07-974, Item 19.]  Consistent with his plea agreement, Pressley filed no appeal or motion for post-conviction relief. Pressley has served his sentence of imprisonment and is now serving his term of supervised release.

Defendant asserts in his motion that the Government was aware at the time it drafted the plea agreement that Defendant was receiving SSI benefits, and therefore that the plea agreement implicitly includes an agreement to not prosecute Defendant for receipt of such benefits.  In support of this contention, Defendant points to the Pre-Sentence Investigation Report

prepared by a U.S. Probation Officer on February 26, 2008, prior to Defendant's sentencing, which noted that Defendant was legally blind.  Pre-Sentence Report ¶ 117.  Further, Defendant notes that he received notice from the SSA of a possible overpayment determination on December 18, 2007, only eight days following his guilty plea.  Defendant later administratively appealed the initial determination, and on September 18, 2008, the SSA Office of Disability Adjudication and Review affirmed the determination of overpayment, explaining that

> [t]he Social Security Administration discovered that Mr. Pressley was president of the Pleasantville board of Education and had pleaded guilty to taking bribes. Development was initiated to determine if the claimant had resources of $2,000.00 or more and on December 18, 2007, Mr. Pressley was notified that no Supplemental Security Income Payments were due beginning on October 2006 because of resources worth more than $2,000.00 since that month.

Sept. 18, 2008 SSA Opinion, Def.'s Ex. D.

On August 9, 2011, after Defendant had completed his custodial term of imprisonment, a federal grand jury in the District of New Jersey returned the indictment in the instant matter alleging one count of conversion of money of the United States in violation of 18 U.S.C. § 641.  The indictment alleges that between January 2003 and December 2007, Defendant collected SSI payments while concealing income and resources from the SSA, resulting in overpayments by the SSA of approximately $31,597.

According to the Government's Bill of Particulars [Docket

Item 10], Defendant allegedly concealed income from eight distinct sources, spread over approximately 59 months, totaling approximately $92,000.  Bill of Particulars at 1-8.  Included in those eight sources, and by far the largest single source of income, the Government alleges that Defendant concealed $35,800 of bribes from June through September, 2006; these are the bribes that formed the basis of Defendant's prior conviction.  Bill of Particulars at 6.  The parties do not dispute that Defendant could be convicted for the alleged crime on the basis of the bribe payments alone, though the Government maintains that it could also secure a conviction based only on proof of the other seven alleged sources of income.[2]

The Court held oral argument on the instant motion to dismiss on December 12, 2011, at which both parties declined to present testimony or convene any further evidentiary hearings on the matter.  The record is therefore complete for adjudication.

---

[2] The other seven alleged sources of concealed income, as stated in the Bill of Particulars, totaling $56,542.12, include employment income at Bally's Park Place from December 2002 to January 2004; employment at Timberland Retail from November 2003 to July 2005; employment by Rite Aid in September and October 2004; employment by Atlantic City Board of Education in August 2005; employment at PleasanTech Academy Charter School from September 2005 to May 2006; receipt of New Jersey State unemployment benefits from December 2005 to May 2006; employment at Forman Mills from October 2006 to January 2007; and resumption of unemployment benefits from January 2007 to October 2007. Defendant does not claim that prosecution for any of these seven undisclosed income sources is precluded by the 2007 plea agreement.

## III.  DISCUSSION

Defendant argues that the prosecution in this matter is a breach of his December 10, 2007, plea agreement in the 07-974 matter.  Defendant argues that the Government's attempt to prove the SSA conversion charge based in whole or in part on the fact that he received the bribes as concealed income runs afoul of the portion of the agreement in which the Government agreed that it would "not initiate any further criminal charges against James A. Pressley for, between in or about May 2006 and November 2006, demanding and accepting corrupt payments in exchange for his official action and influence. . . ."  Plea Agreement at 1. Defendant further asserts that he reasonably understood this provision to prohibit future prosecution for the conduct of accepting these funds, and that his understanding was furthered by his belief that the prosecutors in his bribery case were aware of his receipt of Social Security benefits.  Finally, Defendant argues that the provision of the Plea Agreement stating that the United States or agency thereof could still pursue him civilly for receipt of these funds demonstrates his reasonable understanding of the agreement as precluding criminal prosecution for such conduct.  Plea Agreement at 4, <u>supra</u>.

The Government, in opposition, argues that the plea agreement only prohibits it from prosecuting Defendant for accepting the money "in exchange for his official actions and

influence" and does not prevent it from prosecuting him for different criminal conduct.  The Government further argues that Defendant has presented no evidence that the prosecutors in his case were aware, at the time they entered into the plea agreement, of any potential Social Security benefits Defendant was receiving, or that his undisclosed receipt of the bribery proceeds might constitute a crime under 18 U.S.C. § 641 as a result.

When a defendant claims that the Government has breached a plea agreement, the Court must "determine whether, under contract law principles, the Government breached the plea agreement. In doing so 'we are mindful of the government's tremendous bargaining power and strictly construe the text of the Agreement against the government.'"  United States v. Trant, 389 F. App'x 122, 125 (3d Cir. 2010) (quoting United States v. Schwartz, 511 F.3d 403, 405 (3d Cir. 2008)).

The Supreme Court has held that the acceptance and enforcement of plea agreements

> must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.

Santobello v. New York, 404 U.S. 257, 262 (1971).

The Third Circuit has established a three-step procedure for

evaluating such disputes.  "First, we will identify the terms of the agreement and the alleged improper conduct of the government. Second, we will determine whether the government violated its obligations under the plea agreement. Third, we will fashion an appropriate remedy for any violations that occurred."  United States v. Nolan-Cooper, 155 F.3d 221, 235 (3d Cir. 1998).  The Court will follow this procedure, beginning with interpreting the plea agreement.

### 1.   Plea Agreement and Government Conduct

The Court begins by evaluating the language of the plea agreement in question and determining what Defendant could have reasonably understood to have bargained for in entering into the plea agreement.  "In determining whether the terms of a plea agreement have been violated, [the] court must determine whether the government's conduct is inconsistent with what was reasonably understood by the defendant when entering the plea of guilty." United States v. Badaracco, 954 F.2d 928, 939 (3d Cir. 1992) (quoting United States v. Nelson, 837 F.2d 1519, 1521-22 (11th Cir. 1988)).  "However, cases of disappointed but unfounded expectations must be carefully distinguished from those in which the defendant's expectations as to his sentence are predicated upon promises by the Government or statements from the court." Id. (quoting United States v. Crusco, 536 F.2d 21, 24 (3d Cir. 1976)).

In the instant matter, Defendant argues that he reasonably believed the plea agreement prevented the Government from prosecuting him again for accepting the bribe payment in the summer of 2006.  He argues that this belief was founded first on the language of the plea agreement itself and second on his belief that the Government prosecutors were aware of his acceptance of SSI benefits.

As to the prosecutors' awareness of Defendant's SSI benefits, the Court finds no evidence in the record to support Defendant's subjective belief on this score.  The fact that the SSA administrative investigation into potential overpayments was initiated after Defendant pleaded guilty to accepting the bribes does not raise the inference that anyone in the United States Attorney's Office knew of his SSI benefits at the time of the plea agreement or Defendant's plea on December 10, 2007. Further, the fact that the Pre-sentence Report, prepared in February of 2008, mentions that Defendant was legally blind in one eye similarly does not permit an inference that in December of 2007 the prosecutors were aware of any SSI benefits.  Indeed, the Court notes that the Pre-sentence Report itself makes no reference to Defendant receiving SSI benefits, including in the sections describing Defendant's physical condition, his employment record, or his financial condition.  Pre-Sentence Report ¶¶ 115-127.  The Court therefore finds as a fact that the

Government prosecutors of Defendant's 2007 criminal action were not aware of Defendant's SSI benefits as of December 10, 2007. The Court further finds as fact that there has been no prosecutorial misconduct in this action, as the prosecutors in the 2007 prosecution were not aware of Defendant's SSI benefits, and the initiation of the present action appears to be an inadvertent breach of the plea agreement based on a reasonable but incorrect narrow reading of its non-prosecution clauses, as now discussed.

However, the Court concludes that the language of the plea agreement itself justifies Defendant's reasonable belief that the Government would not initiate future prosecution on the basis of Defendant's acceptance of the 2006 bribes.  The agreement states that, in exchange for Defendant's performance under the agreement, "this Office will not initiate any further criminal charges against James A. Pressley for, between in or about May 2006 and November 2006, demanding and accepting corrupt payments in exchange for his official action and influence . . . ."  Plea Agreement at 1.  The Court concludes that this language prohibits the Government from initiating any subsequent prosecution of Defendant as a result of the <u>conduct</u> of accepting the subject bribe payments.

The Court notes a potential alternative interpretation of this provision which would hold, much more narrowly, that the

Government only agreed not to prosecute Defendant for the <u>crime</u> of accepting corrupt payments in exchange for official action and influence in the summer of 2006.  However, to the extent that this is a genuine ambiguity in the agreement, it should be construed in Defendant's favor.  <u>United States v. Williams</u>, 510 F.3d 416, 422 (3d Cir. 2007) ("any ambiguities in a plea agreement must be construed against the government.").[3]

Secondly, the Court's interpretation of the agreement is bolstered by the section of the agreement regarding civil enforcement.  The agreement states that "[t]his Agreement does not prohibit the United States, any agency thereof (including the Internal Revenue Service) or any third party from initiating or prosecuting any civil proceeding against James A. Pressley."  Plea Agreement at 4.  The Court interprets this portion of the agreement as a promise by the United States, in exchange for Defendant's performance, to refrain from criminal tax prosecution for Defendant's conduct of accepting the bribe payments as unreported income, but was explicitly <u>not</u> agreeing to refrain

---

[3] Indeed, the Court further finds that the plea agreement is not even ambiguous in this regard, as such a future prosecution for the <u>crime</u> of accepting corrupt payments in exchange for official action and influence would be barred by the Fifth Amendment prohibition against double jeopardy because Defendant was already pleading guilty to that crime.  Thus, the Court will not interpret the plea agreement to have conferred no benefit on Defendant other than the Government's promise to refrain from doing something it was already constitutionally prohibited from doing.

from civil tax enforcement for such conduct.  This section would be surplus were the agreement to be read to only promise to refrain from re-prosecuting Defendant for the crime of accepting bribes.

Therefore, the Court concludes that the language of the plea agreement should be interpreted as barring the Government from prosecuting Defendant for other crimes based on the conduct of accepting the bribe payments in 2006.

The Court turns now to evaluating the Government's subsequent prosecution and indictment that Defendant claims is in breach of this agreement.  The indictment in this matter does not specifically allege that Defendant accepted the subject bribe payments; it alleges instead that Defendant collected SSI payments under one Social Security number while collecting income and resources under a separate Social Security number, and that by concealing income and resources from the SSA, he caused the SSA to submit SSI benefits payments to him in an amount greater than that to which he was entitled.  Indictment at ¶¶ 3-5. However, the Government's Bill of Particulars indicates that the Government presented to the Grand Jury and seeks to prove its allegations of concealed income by reference to several sources of unreported income, including the acceptance of the bribe

payments.[4]  Bill of Particulars at 6.  The Government seeks to
prove, therefore, that Defendant violated 18 U.S.C. § 641, at
least in part, based on the same conduct that was the subject of
Defendant's plea agreement, namely, his receipt of bribe income
in 2006.

     2.  <u>Breach Analysis</u>

    The Government argues that the motion should be denied
because the present prosecution is not based <u>exclusively</u> on
Defendant's acceptance of the bribes, but also on several other
unrelated sources of concealed income.  The Government cites to
cases such as <u>United States v. Rivera</u>, 844 F.2d 916 (2d Cir.
1988), where courts have rejected similar claims of breach of
plea agreement for a subsequent prosecution.  In <u>Rivera</u>, for
example, the Second Circuit rejected the defendant's appeal of a
conviction based on a claimed breach of plea agreement.  The
defendant in that case initially pleaded guilty under a plea
agreement in which the Government agreed to dismiss a drug
distribution conspiracy charge.  <u>Rivera</u>, 844 F.2d at 923.  The
Government subsequently brought a new indictment alleging a new
course of conduct and that defendant participated in a separate
drug distribution conspiracy in the same geographical area around

_____

   [4] At oral argument, the Government represented to the Court
that the 2006 bribe income was not described to the Grand Jury as
a "bribe" but merely as one of several unreported sources of
income.

the same time.  Id.  The Second Circuit held that because the two conspiracies involved different participants, a different scale of distribution, a different agreement, and no shared overt acts between the two different conspiracies, that charging the defendant with the second conspiracy did not breach the plea agreement to dismiss the charge as to the first conspiracy.  Id. Therefore, because the second indictment was not based on the same conduct as the first, the court found that no breach occurred.

The Court concludes that the instant matter is a closer case, however.  Here, the Government agreed in the plea agreement to not bring any further prosecution for Defendant's acceptance of the bribe money, and then subsequently charged him with a different crime that it seeks to prove, in part, by reference to the fact that Defendant accepted the same bribe money and did not report it to the SSA.  The fact that there are other alleged acts and sources of income that could also prove Defendant's culpability for the alleged crime does not alter the fact that an undeniable basis for the indictment, and one possible basis for conviction, is directly dependent on the same conduct that was the subject of the plea agreement.

The Court finds this situation to be akin to the Government charging Defendant with criminal tax fraud for failing to report several different sources of income, including the bribe

16

payments.  The language on page 4 of the plea agreement related
to civil enforcement is reasonably read to prohibit such a
criminal tax fraud prosecution, and the Court believes the same
result should obtain here.

When evaluating whether the Government's conduct constitutes
a breach of a plea agreement, the Court must be careful to
strictly hold the Government to the terms and reasonable
expectations of its plea agreements.  "This requirement
prohibits, therefore, not only explicit repudiation of the
government's assurances, but must in the interests of fairness be
read to forbid end-runs around them." United States v. Rivera-
Rodriguez, 489 F.3d 48, 57 (1st Cir. 2007).  "[B]ecause a
defendant gives up multiple constitutional rights by entering
into a plea agreement, courts must carefully scrutinize the
agreement to insure that the government has fulfilled its
promises." Williams, 510 F.3d at 422.

In the Fourth Circuit case of United States v. Jordan, 509
F.3d 191 (4th Cir. 2007), the court vacated the conviction of a
defendant because it found that the prosecution had breached a
prior plea agreement.  In Jordan, the defendant was initially
indicted in 2002 for conspiracy to distribute crack cocaine, in
an alleged conspiracy that began as early as 2001 an continued
through August of 2002.  Id. at 195.  The defendant pleaded
guilty to one count of distribution of a controlled substance

17

pursuant to a plea agreement which held, in part, that in exchange the Government would not "further criminally prosecute [defendant] . . . for the specific conduct described in the indictment or statement of facts." Id.

The defendant was subsequently indicted for, inter alia, committing murder while engaged in a drug trafficking offense. Id. at 193-94. The defendant was convicted of the subsequent charges, but the Fourth Circuit vacated the conviction after concluding that the subsequent indictment, which required proof of the identical conduct of participation in the conspiracy to distribute crack cocaine that was the subject of his 2002 indictment, breached the plea agreement. Id. The court concluded that because, in order to convict the defendant of the charged crime, the Government relied on proof of the identical conduct, namely the participation in the same drug distribution conspiracy that was the subject of the 2002 plea agreement, the Government's prosecution breached the 2002 plea agreement and required vacating the conviction and dismissal of the indictment. Id. at 197-98.

The Court finds the reasoning of the Jordan case persuasive in the instant matter. Here, as in Jordan, the Government has agreed previously not to bring subsequent charges based on the conduct alleged in an earlier indictment. And here, as in Jordan, the Government has subsequently brought a new indictment

18

based in part on proof of the same conduct, that is, the receipt of bribe income in 2006.  The Court recognizes that the two cases diverge in one key respect: in <u>Jordan</u>, the subsequent charge (murder while engaged in drug trafficking offense) <u>required</u> proof of the earlier conduct (conspiracy to distribute) covered under the plea agreement.  <u>Id.</u> at 198-99.  In the instant matter, by contrast, the Government argues that it need not necessarily rely on Defendant's acceptance of bribes in order to convict for conversion of government money because it is prepared to present evidence of other sources of concealed income.  The Court concludes that this difference does not sufficiently distinguish the reasoning at this pre-trial stage, where the Government has admittedly obtained the indictment in this matter after presenting evidence of the bribe income to the grand jury, as recited in the Bill of Particulars.

To the extent that the distinction between the instant case and <u>Jordan</u> turns on whether or not the Government can cure the breach by simply not presenting evidence of the bribe income to the jury at trial, the Court will address the issue when it next turns to considering remedies.  Further, the Court's conclusion that the Government's prosecution in this matter has breached Defendant's 2007 plea agreement does not mean that the Government is prohibited from prosecuting Defendant for the crime of conversion of United States money under 18 U.S.C. § 641, provided

19

it does not rely on the conduct of accepting the $40,000 in bribes that was the subject of the 2007 plea agreement.  In other words, nothing in the 2007 plea agreement precludes indicting Pressley for the crime of receiving SSI payments while concealing sources of income from the SSA in violation of 18 U.S.C. § 641 so long as those concealed income sources do not include the bribes from 2006 that were the subject of his 2007 plea agreement's protection against further prosecution.

      3.  <u>Remedy</u>

The Court turns next to determining the appropriate remedy for the identified breach of the 2007 plea agreement.  Defendant argues that the Court should dismiss the indictment entirely while the Government argues that the breach can be cured through an order suppressing evidence of the 2006 bribes as income.

In the Third Circuit, as in other federal circuits, when the Court determines that the Government has breached a plea agreement, the Court is to fashion a remedy, which typically amounts to either granting "specific performance" to the defendant or allowing the defendant to withdraw the guilty plea. <u>Badaracco</u>, 954 F.2d at 941.  This choice of remedy is typically considered in the context of the Government's breach at sentencing, where withdrawal of the original guilty plea is still a valid option.  Where, as here, Defendant has already served his custodial sentence, "permitting the withdrawal of his plea would

be an empty remedy." Id.  Therefore, the Court will evaluate whether the remedy of specific performance is appropriate here and what the term means in the context of a breach that has occurred as a result of a subsequent prosecution rather than in the sentencing context.

In cases where the breach occurs because the Government has brought a subsequent indictment contrary to its promises in a plea agreement, courts typically order "specific performance" which amounts to dismissal of the subsequent indictment. See United States v. Hawes, 774 F. Supp. 965, 976 (E.D.N.C. 1991) ("The court holds that the government has breached that agreement . . . As such, the court will order specific performance of the agreement and will dismiss counts three and four as against [defendant].").

The Government argues that the appropriate remedy in this matter is not to dismiss the indictment entirely, but to merely suppress the presentation of the evidence of bribes to the jury at trial.  Defendant responds that dismissal of the indictment is necessary to purge the taint created by the Government's breach in presenting the evidence of the bribes to the grand jury, given that the bribes represent a large part of the total amount of concealed income.

The Court can find no authority that would support the Government's claim that suppression alone is sufficient.  Indeed,

21

the Court is unable to find any case in a federal court with a similar fact pattern.  Therefore, the Court will endeavor to fashion a remedy specific to this unique situation by analogy to other contexts in which the Government has breached a plea agreement.

In cases where the Government breaches a plea agreement at the sentencing phase, the practice of the Third Circuit, and other circuits, is to remand the matter for specific performance and resentencing to a different district judge than the one who performed the original sentence out of concern for the due process rights of the injured defendant.  See Badaracco, 954 F.2d at 941 (defendant to be resentenced by a different judge than the original sentencing judge).

The Fifth Circuit recently explained that this procedure is necessary to remove the taint caused by a breach.  "The remedy of resentencing by a different district judge is not based on any misstep by the original sentencing judge; instead, it reflects a need to remove the taint of the original error by the government--its breach of the plea agreement."  United States v. Rodriguez, 602 F.3d 346, 359 (5th Cir. 2010).

Similarly, here, the Court concludes that, under these facts, suppression of the bribe income at trial is an insufficient remedy to cure the breach.  In the 2007 plea agreement, the Government promised to "not initiate any further

22

criminal charges" based on Defendant's acceptance of the bribes, rather than merely to refrain from underlining{convicting} on that basis.  The breach therefore occurred in the indictment process.  The 2007 plea agreement protected Pressley from the initiation of such a charge, not merely from the introduction of evidence of the bribes to obtain a subsequent conviction.  Dismissal of the indictment without prejudice to re-indicting Defendant without use of the bribe evidence is the closest analog the Court can find to the usual practice of remanding for resentencing to a different judge, because it overcomes the prospect that the Grand Jury was tainted by the bribe evidence.  This remedy is the most faithful to the Supreme Court's command to promote "the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty."  Santobello, 404 U.S. at 262.  However, such a remedy, prior to the running of the statute of limitations, does not bar the Government from re-indicting Defendant for this same crime, provided the indictment is procured without reference to Defendant accepting the bribe payments that were the subject of his plea agreement.

## IV.  CONCLUSION

     As explained above, the Court has determined that the Government breached its 2007 plea agreement with Defendant

23

Pressley by initiating a prosecution in the instant matter by presenting evidence of Defendant's 2006 bribe payments as one major component of his commission of the instant charge of conversion of United States money in violation of 18 U.S.C. § 641.  The Court finds no evidence of willful misconduct by the prosecution.  Accordingly, the Court has determined that the appropriate remedy for this breach is to dismiss the indictment without prejudice.  The accompanying Order will be entered.


**April 4, 2012**                          **s/ Jerome B. Simandle**
DATE                                JEROME B. SIMANDLE
                                    Chief U.S. District Judge

24